**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DEBORAH ANN FIORILLO** | : | |
|     **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | **3:13-cv-1287 (VLB)** |
| | : | |
| **UNITED TECHNOLOGIES CORP.,** | : | **September 30, 2015** |
| **SIKORSKY AIRCRAFT CORP.,** | : | |
| **ARIEL R. DAVID, LISA LAFFERTY,** | : | |
| **NATALIE MORRIS, CHRISTIAN** | : | |
| **MEISNER, AND LIBERTY LIFE** | : | |
| **ASSURANCE OF BOSTON,** | : | |
|     **Defendants.** | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT LIBERTY LIFE
ASSURANCE'S MOTION TO DISMISS [Dkt. #91] AND GRANTING IN PART AND
DENYING IN PART THE EMPLOYER DEFENDANTS' MOTION TO DISMISS [Dkt.
#92]**

Plaintiff Deborah Ann Fiorillo ("Fiorillo") brings federal disability

discrimination, hostile work environment, and equal protection claims under,

respectively, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §

12101, *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*,

and 42 U.S.C. § 1983, and state law claims of wrongful termination, breach of

contract, and intentional infliction of emotional distress against Defendants

United Technologies Corp. ("UTC"), Sikorsky Aircraft Corp. ("Sikorsky"), Ariel R.

David ("David"), Lisa Lafferty ("Lafferty"), Natalie Morris ("Morris"), Christian

Meisner ("Meisner") (collectively the "Employer Defendants"), and Liberty Life

Assurance of Boston ("Liberty").  For the reasons that follow, Liberty's Motion to

Dismiss is GRANTED and the Employer Defendants' Motion to Dismiss is

GRANTED in part and DENIED in part.

I.    Procedural History

This action was originally commenced on September 3, 2013 when Plaintiff Fiorillo, then proceeding *pro se*, filed her initial Complaint ("Original Complaint"), along with hundreds of pages of documents attached thereto.  *See* [Dkt. ## 1, 7-8].  On May 3, 2014, counsel for Plaintiff filed a notice of appearance.  [Dkt. #43].  Three days later, counsel filed an Amended Complaint.  [Dkt. #44].  On June 16, 2014, the Employer Defendants and Defendant Liberty each filed motions to dismiss.  [Dkt. ## 54-55].  In response, Plaintiff filed a Second Amended Complaint, a Corrected Second Amended Complaint, and a Second Corrected Second Amended Complaint ("Operative Complaint").  *See* [Dkt. ## 68-71].

II.   Factual Background

At this stage, the Court derives the facts of this case from the allegations contained in the Operative Complaint, as well as the charge, intake questionnaire, and correspondence with the Equal Employment Opportunity Commission ("EEOC") attached to the Original Complaint.  *See Jenkins v. Chase Bank USA, N.A.*, No. 14-cv-5685 (SJF), 2015 WL 4988103, at *1 n. 1 (E.D.N.Y. Aug. 19, 2015) (stating that "even though the [Second Amended Complaint] is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits.") (quoting *Poindexter v. EMI Record Grp., Inc.*, No. 11-civ-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)); *Torres v. Howell*, No. 3:03-cv-2227 (MRK) (WIG), 2006 WL 1525942, at *2 (D. Conn. May 30, 2006) (resolving motion to dismiss and taking facts from plaintiff's amended complaint and "the

exhibits attached to both his original [] and amended complaints") (citing and quoting *Levy v. Southbrook Int'l Invs. Ltd.*, 263 F.3d 10, 13 n. 3 (2d Cir. 2001)).[1]

Plaintiff was hired by Defendant Sikorsky, a subsidiary of Defendant UTC, on or about June 21, 1993.  [Dkt. #71, Second Corrected Second Am. Compl. at ¶¶ 3, 10].  On or about July 19, 2011, Plaintiff had an "acute panic attack" that was triggered by an excessive workload, requiring her to work in excess of sixteen hours per day, and harassment from Sikorsky employees, David, Lafferty, and Meisner.  [*Id.* at ¶¶ 9, 11-12].  In the months leading up to the panic attack, Plaintiff repeatedly informed David that she was experiencing increased stress and anxiety and requested a reduced workload and/or additional staffing assistance.

---

[1] In addition to clear law permitting for consideration on a motion to dismiss documents attached as exhibits to previous complaints, "[c]ourts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference."  *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (citing and quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)) (treating the plaintiff's allegations in the affidavit she submitted to the EEOC as an "integral part of her pleadings").  The Operative Complaint references and describes the EEOC intake questionnaire Plaintiff filed with the Commission dated July 13, 2012, a subsequent statement submitted by Plaintiff to the EEOC on January 17, 2013 in the course of its investigation, and the EEOC's "Right to Sue" letter.  *See* [Dkt. #71, Second Corrected Second Am. Compl. at ¶¶ 15, 22-23].  Plaintiff's counsel's subsequent request for the withdrawal and return of the documents attached to Plaintiff's Original Complaint does not alter this conclusion for four reasons.  *See* [Dkt. #45].  First, the motion was denied because Plaintiff failed to cite any legal authority in support of her request.  *See* [Dkt. #47].  Second, the motion did not address subsequent consideration of the attached documents; it simply asked that they "be withdrawn and . . . returned."  [Dkt. #45].  Third, even if Plaintiff had made such a request, it would have been denied.  *See Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 759, 754 (7th Cir. 2002) (stating that a plaintiff may not attach a document to a complaint "and later, after realizing the consequences, attempt to retract the exhibit").  Fourth, in opposing the motions to dismiss, Plaintiff does not object to Defendants' use, and instead, relies on allegations and documents attached to the Original Complaint.  *See* [Dkt. #98, Pl.'s Opp. to Liberty's Mot. to Dismiss at 4-7; Dkt. #99, Pl.'s Opp. to Employer Defs.' Mot. to Dismiss at 6-7, 9-10, Ex. A-B].

[*Id.* at ¶ 10].  In response to this request, David, along with Lafferty and Meisner, told Plaintiff to "deal with it" and denied her request for assistance.  [*Id.* at ¶ 12].  After her panic attack, Plaintiff sought treatment from a number of physicians and was diagnosed with Post Traumatic Stress Disorder ("PTSD").  [*Id.* at ¶ 13].  By that time, Plaintiff had already been diagnosed with depression and anxiety, and was taking medication for these conditions.  [*Id.*].[2]  However, Plaintiff's physicians determined that her prior medical regiment would need to be modified in light of her July 2011 panic attack.  [*Id.*].

Soon after the attack, Plaintiff left work and filed for short-term disability ("STD") and long-term disability ("LTD") benefits with Defendant Liberty, the administrator of Plaintiff's employee benefits program.  [*Id.* at ¶ 14].  Plaintiff also requested from Liberty use of approximately 95 accrued sick days.  [*Id.* at ¶ 15].  Liberty denied all of Plaintiff's requests, and Plaintiff contends that the denials were "unwarranted and due, in substantial part, to the Plaintiff's physical and mental disabilities."  [*Id.*].  Despite receiving medical documentation regarding Plaintiff's disabilities and inability to work, Plaintiff asserts that Liberty and Sikorsky concluded she was simply a "malingerer" when they denied her requests for benefits.  [*Id.* at ¶ 16].

In addition, while Plaintiff was away from work, she received emails and phone calls from David and Lafferty repeatedly asking her for a specific return date.  [*Id.* at ¶ 17].  Plaintiff responded that she could not return until she was

---

[2] In fact, on three separate occasions, in 1995, 2001, and 2008, Plaintiff's medical conditions caused her to take time off from work.  *See* [Dkt. #71, Second Corrected Second Am. Compl. at ¶ 18].  Defendants David, Lafferty, and Meisner were each aware of Plaintiff's absences.  [*Id.*].

medically cleared by her treating physicians.  [*Id.*].  Plaintiff was also contacted by Carol Kagdis ("Kagdis"), Medical Director of Sikorsky, who asked Plaintiff to identify the specific accommodations she needed in order to return to work.  [*Id.* at ¶ 19].  Plaintiff told her that she needed "more people, less work, and undisturbed time to get her therapy, focus on getting better[,] and correct combinations of her medications."  [*Id.*].

On or about September 30, 2011, Sikorsky removed Plaintiff from its payroll and informed her that she could not use her sick days to hold her position open, despite having deemed Plaintiff's condition "situational."  [*Id.* at ¶ 20].  Sikorsky then terminated Plaintiff on November 14, 2011. [*Id.* at ¶ 20].

On July 13, 2012, Plaintiff submitted a signed intake questionnaire to the EEOC.  [*Id.* at ¶ 22; Dkt. #8, Exs. to Compl. at 65-66].  The questionnaire stated that Plaintiff believed she had been discriminated against by her employer, "Sikorsky Aircraft Corporation (UTC)" and her immediate supervisor, "Ariel David."  [*Id.* at 65].  Plaintiff also recommended that the EEOC speak with a contract administrator at Sikorsky, who "will tell you of work conditions and work stress and treatment – she left Sikorsky years ago."  [*Id.* at 66].   Finally, she wrote that "Sikorsky caused my nervous breakdown due to work[-]related stress and dismissal by management when asked for help."  [*Id.*].

Less than a month later, Plaintiff filed a formal charge, which was received by the EEOC on August 10, 2012.  [Dkt. #8, Exs. to Compl. at 64].  The charge named Sikorsky as the discriminatory organization and asserted that Plaintiff suffered "employment discrimination because of [her] disability, in violation of

the Americans with Disabilities Act of 1990."  [*Id.*].  Specifically, Plaintiff

contended that in 1995, she received STD benefits and FMLA leave due to her

disability, but that when she again applied for leave, her request was denied.

[*Id.*].  She claimed she was subsequently terminated when she was unable to

provide Sikorsky with a return to work date or a potential reasonable

accommodation.  [*Id.*].

The EEOC commenced its investigation sometime thereafter, and on

January 18, 2013, Plaintiff sent a document (dated January 17, 2013) to the EEOC

investigator outlining the facts of her claim and requesting "that the Commission

continue with [her] charge of disability discrimination."  [Dkt. #8, Exs. to Compl.

at 34].[3]  The document set forth many details regarding Plaintiff's employment at

Sikorsky, her medical history, the work environment at Sikorsky, and the

circumstances leading up to her departure from Sikorsky.  *See* [*id.* at 28-35].

Specifically, Plaintiff informed the EEOC that she was in a "strained work

environment," endured "harassment" from colleagues, including being yelled at

---

[3] In both the Operative Complaint and her oppositions to Defendants' motions to
dismiss, Plaintiff repeatedly characterizes this letter as a "Complaint Affidavit"
which accompanied her July 2012 EEOC filing.  [Dkt. #71, Second Corrected
Second Am. Compl. at ¶¶ 15, 22; Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to
Dismiss at 4-7; Dkt. #99, Pl.'s Opp. to Employer Defendants' Mot. to Dismiss at
9-10, Ex. B].  Plaintiff is incorrect.  This document is neither an affidavit nor a
part of Plaintiff's EEOC charge.  The document is signed but is not verified or
otherwise "confirmed by the oath or affirmation of the party making it."  *Jeffreys
v. United Techs. Corp.*, No. 3:97-cv-01344 (DJS), 2008 WL 691716, at *3 (D. Conn.
Mar. 13, 2008) (rejecting plaintiff's characterization of his filing as a "Supporting
Affidavit" because it "was neither confirmed by the [p]laintiff's oath or
affirmation nor taken before a person having authority to administer such an
oath or affirmation").  In addition, the face of the document indicates that it was
drafted on January 17, 2013, six months *after* Plaintiff submitted her intake
questionnaire and five months *after* she filed her formal charge.  *See* [Dkt. #8,
Exs. to Compl. at 28-35, 64-66].

and intimidated, that she sought help but was "dismissed," and that she and her doctors had concluded that it was "a hostile work environment." [*Id.* at 30-32]. While the document occasionally referenced UTC and Liberty, the allegations underlying her charge were clearly rooted in conduct undertaken by her employer, Sikorsky.  As to Liberty, the document states that Plaintiff filed disability claims with Liberty, was working her claim through with Liberty, had appealed Liberty's denial of her claims, and in reviewing her claim, Liberty found the written documentation her doctors submitted to be "insufficient" and had requested additional "office notes" from the doctors.  *See* [*id.* at 32-33].  Indeed, the only specific complaint Plaintiff lodged in this document about Liberty's denial of benefits was her belief that Liberty was "not justified in . . . assuming that PTSD is solely a military trauma." [*Id.* at 34].

Upon completing its investigation, the EEOC declined to find a violation and issued Plaintiff a Right to Sue notice.  *See* [*id.* at 4-7].[4]  Plaintiff filed her Original Complaint on September 3, 2013.  [Dkt. #1].

III.   Legal Standards

A.   Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

---

[4] The parties vigorously contest when Plaintiff received the letter from the EEOC containing her Right to Sue Notice.  The Operative Complaint states that Plaintiff "obtained" it "on or about May 30, 2013."  [Dkt. #71, Second Corrected Second Am. Compl. at ¶ 23].  However, the verified Original Complaint asserts that the letter was "issued 30 May 2013, Rec[eive]d 4 June 2013 or thereafter." [Dkt. #1 Compl. at 4, ¶ 1.c.].  In addition, the first page of the letter attached to Plaintiff's Original Complaint appears to bear a stamp with the date of "May 30." [Dkt. #8, Exs. to Compl. at 4].

face." *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

B.    Exhaustion and EEOC Charges

Title I of the ADA prohibits employers from discriminating against disabled

employees.  *See* 42 U.S.C. § 12112(a).  "ADA Title I incorporates various provisions from Title VII of the landmark Civil Rights Act of 1964," including its "administrative-exhaustion provision."  *McInerney v. Rensselaer Polytechnic Institute*, 505 F.3d 135, 138 (2d Cir. 2007).  Under Title VII, "a plaintiff must exhaust all administrative remedies" before filing a claim in federal court.  *Hoffman v. Williamsville School Dist.*, 443 F. App'x 647, 649 (2d Cir. Oct. 31, 2011) (citing *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003)).  The purpose of the exhaustion requirement is "to give an administrative agency the opportunity to investigate, mediate, and to take remedial action to encourage settlement."  *Herzog v. McLane N.E., Inc.*, 999 F. Supp. 274, 276 (N.D.N.Y. 1998) (citing *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985)).  An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge."  *Id.* (citing *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam).

      1.  <u>Claims "Reasonably Related" to Those Before the EEOC</u>

      "A claim raised for the first time in the district court is 'reasonably related' to allegations in an EEOC charge 'where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  *Holtz v. Rockefeller Co.*, 258 F.3d 62. 83 (2d Cir. 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)).  This exception to the exhaustion requirement "'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of

counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering.'" *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Butts*, 990 F.2d at 1402)).  "The 'reasonably related' inquiry requires a fact-intensive analysis" in which the "focus should be on the factual allegations made in the [] charge itself, describing the discriminatory conduct about which a plaintiff is grieving . . . [I]t is the substance of the charge and not its label that controls."  *Mathirampuzha v. Potter*, 548 F.3d 70, 76-77 (2d Cir. 2008) (quoting *Deravin*, 335 F.3d at 201 and *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998)).  "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination [of the type alleged in the civil complaint].'" *Falso v. Sutherland Global Servs.,* 494 F. Supp. 2d 207, 210 (W.D.N.Y. 2007) (quoting *Williams*, 458 F.3d at 70).[5]

### 2.  Naming of Parties in the EEOC Charge

"Under Title VII and the ADA, prior to bringing claims in federal court, a plaintiff must first name the defendants in a complaint filed with the EEOC." *Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA) (JLC), 2013 WL 3487032, at *9 (S.D.N.Y. Jul. 9, 2013) (citing *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)).  However, because courts have assumed a "flexible stance in interpreting Title VII's procedural provisions . . . courts have recognized an exception to the

---

[5] The Second Circuit has identified two other exceptions to the exhaustion requirement, neither of which is applicable here.  *See Butts*, 990 F.2d at 1402-03 ("The second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge . . . The third type  . . . is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.").

general rule that a defendant must be named in the EEOC complaint."  *Id.*
(quoting *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754-55 (2d Cir.
1976)).  "This exception, termed the 'identity of interest' exception, permits a Title
VII action to proceed against an unnamed party where there is a clear identity of
interest between the unnamed defendant and the party named in the
administrative charge."  *Id.*[6]  Its purpose is to protect "parties not versed in the
vagaries of Title VII and its jurisdictional and pleading requirements . . . so as not
to frustrate Title VII's remedial goals."  *Id.*  To determine whether the exception
applies, courts in this Circuit apply a four-factor test:

> 1) whether the role of the unnamed party could through reasonable
> effort  by the complainant be ascertained at the time of the filing of
> the EEOC complaint; 2) whether, under the circumstances, the
> interests of a named [party] are so similar as the unnamed party's
> that for the purpose of obtaining voluntary conciliation and
> compliance it would be unnecessary to include the unnamed party in
> the EEOC proceedings; 3) whether its absence from the EEOC
> proceedings resulted in actual prejudice to the interests of the
> unnamed party; 4) whether the unnamed party has in some way
> represented to the complainant that its relationship with the
> complainant is to be through the named party.

*Id.* at 209-10.

"This multi-factor test is not a mechanical one, and no single factor is
dispositive."  *Joseph v. United Techs. Corp.*, No. 3:14-cv-424 (AWT), 2015 WL
851895, at *4 (D. Conn. Feb. 26, 2015) (citation and quotations omitted).  Courts in
this Circuit consider three additional factors: (1) whether, although not named as

---

[6] The "identity of interest" exception applies with equal force to claims of
discrimination submitted to the EEOC pursuant to the ADA.  *See, e.g., Manzi v.
DiCarlo,* 62 F. Supp. 2d 780, 785-86 (E.D.N.Y. 1999).

a respondent in the caption, the defendant is named in the body of the charges as having played a role in the discrimination; (2) whether the defendant had actual notice of the plaintiff's charge, and (3) whether the plaintiff was represented by counsel at the time they filed their administrative discrimination charge. *Id.* (citations and quotations omitted); *Consolmagno v. Hosp. of St. Raphael*, No. 3:11-cv-109 (PCD), 2011 WL 4804774, at *7 (D. Conn. Oct. 11, 2011).

### 3. Intake Questionnaires as Charges

"The 'primary purpose' of filing a charge of discrimination with the EEOC 'is to alert the EEOC to the discrimination that a plaintiff claims she is suffering' in order 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" *Muhammad*, 52 F. Supp. at 478 (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401-02 (2d Cir. 1993) (citations omitted)). Title VII "does not define the term 'charge.'" *Brown v. City of New York*, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *7 (S.D.N.Y. Jul. 19, 2013). However, "courts in this Circuit have . . . found that the standard" adopted by the Supreme Court in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), which considered an intake questionnaire under the Age Discrimination in Employment Act of 1967 ("ADEA") "is also reasonably applied to Title VII." *Id.* (citing cases).[7]

In *Holowecki*, the Supreme Court stated that, "[i]n addition to the information required by the regulations . . . if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action

---

[7] This same standard applies to intake questionnaires in the ADA context. *See Price v. New York*, 797 F. Supp. 2d 219, 225-26 (E.D.N.Y. 2011).

to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402.  *Holowecki* further instructs that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.  Construing ambiguities against the drafter . . . here . . . would undermine the remedial scheme Congress adopted."  *Id.* at 406.

The implementing regulations that apply to both Title VII and the ADA provide: "A charge shall be in writing and signed and shall be verified."  29 C.F.R. § 1601.9.  While these requirements as to the form of a charge differ from those under the ADEA, the two sets of regulations otherwise "bear substantial similarit[ies]."  *Price*, 797 F. Supp. 2d at 225.  Accordingly, in assessing whether an intake questionnaire constitutes a charge under Title VII or the ADA, courts apply the *Holowecki* standard, in light of the applicable regulatory requirements. *Id.*

As for the intake questionnaire at issue here, weighing in favor of considering it a charge is that Plaintiff checked a box stating: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above."  [Dkt. #8, Exs. to Compl. at 66].  The box also gave the EEOC consent to give Plaintiff's employer information regarding the charge, including her name.  [*Id.*].  On the other hand, the questionnaire states that its "Principal Purpose" is "to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide

charge filing counseling, as appropriate."  [*Id.*].  The form also states that,
"[c]onsistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire
may serve as a charge if it meets the elements of a charge."  [*Id.*].  Thus, the
questionnaire could be construed as stating that it can constitute a charge if it is
completed in a manner sufficient to satisfy the relevant regulations.  Here,
Plaintiff's questionnaire does not, because, while signed and completed, Plaintiff
did not have it verified, as required by 29 C.F.R. § 1601.9.

If Plaintiff had not subsequently submitted a verified charge of
discrimination, the Court would be inclined to find that the questionnaire does
not constitute a charge.  *See* [Dkt. #8, Exs. to Compl. at 64].  However, having
done so, and mindful of 29 C.F.R. § 1601.12(b), which permits a claimant to cure a
prior defect, the Court concludes that the intake questionnaire is a "charge"
within the meaning of the ADA and Title VII.  *See Price*, 797 F.Supp. 2d at 226-27
(concluding intake questionnaire was a charge despite plaintiff's failure to sign it
as required by § 1601.9 where the defect "was cured by his subsequent
submission to the EEOC"); *Brown*, 2013 WL 3789091, at *8-9 (finding intake
questionnaire was a charge where plaintiff checked box with verbatim language
as that checked by Plaintiff here).  Accordingly, the Court considers the
allegations in the intake questionnaire, as well as those stated in the formal
charge of discrimination, in assessing whether a party has been named and the
scope of the allegations before the EEOC.  *See Jallow v. Office of Court Admin.*,
No. 10 Civ. 8575 (PAC) (FM), 2012 WL 4044894, at *6 (S.D.N.Y. Sept. 4, 2012) ("[A]
later-verified charge may relate back to an otherwise timely filing that . . . lacks

the more formal attributes of a charge.") (citing *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 354 (S.D.N.Y. 2007)).

IV.    Analysis

A.    The Complaint Fails to State a Claim Against Defendant Liberty

   1. Count I of the Complaint Fails as to Liberty Because Plaintiff Failed to Exhaust Her Administrative Remedies and Liberty Was Not Plaintiff's Employer

   a. Failure to Exhaust

Count I of the Operative Complaint contends that Liberty violated the ADA when it denied Plaintiff's requests for STD and LTD benefits and the use of 95 accrued sick days on the basis of her physical and mental disabilities. [Dkt. #71, Second Corrected Second Am. Compl. at ¶¶ 14-15]. However, neither in her formal charge nor in the portions of the intake questionnaire Plaintiff submitted along with her Original Complaint, does Plaintiff even mention Defendant Liberty or otherwise contend that her denial of benefits was the product of disability discrimination. *See* [Dkt. #8 Exs. to Compl. at 64-66].

In response, Plaintiff points to the January 17, 2013 document she sent to the EEOC (mischaracterized as a "Complaint Affidavit") and asserts that it "specifically mentions Liberty Life's parent company, 'Liberty Mutual' a number of times." [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 4]. Plaintiff's argument fails for several reasons.

First, the charging documents name Sikorsky as Plaintiff's employer and describe conduct that occurred exclusively in the course of Plaintiff's employment. *See* [Dkt. #8, Exs. to Compl. at 64-66]. Although the charge does

contend that Plaintiff "applied for FMLA due to my disability, submitted medical documentation, but this time my request was denied," there is nothing to indicate that Liberty played any role in the denial of such benefits.  [Dkt. #8, Exs. to Compl. at 64].  Indeed, the Operative Complaint does not bring any claims for the denial of these benefits.  [Dkt. #71, Second Corrected Second Am. Compl. at ¶¶ 14-15].

Second, while the post-charge document references Liberty's *parent* company (which alone casts doubt as to whether sufficient notice had been given to the EEOC about Defendant Liberty's conduct), nowhere does it allege that Liberty denied her claim on *any* discriminatory basis.  *See* [Dkt. #8, Exs. to Compl. at 28-35].  It merely informed the EEOC that she had filed disability claims, that Liberty found the written documentation her doctors submitted to be "insufficient", and that, in denying her claim, Liberty was "not justified in . . . assuming that PTSD is solely a military trauma."  [*Id.* at 32-34].

According to Plaintiff, the document informed the EEOC that Liberty denied her request for "benefits on the basis that her disabling diagnosis of PTSD was directly related to her service in the United States Armed Forces" notwithstanding medical documentation from Plaintiff's doctor stating that her "PTSD had been triggered . . . by the stressful and hostile work environment to which she was subjected at UTC/Sikorsky."  [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 5].  Even if the Court were to accept Plaintiff's characterization of her statements to the EEOC, they do not signal any claim of discrimination. They merely express disagreement with Liberty's conclusion that Plaintiff's

condition for which she sought coverage directly related to her military service, and was thus excluded from coverage under the terms of the policy.

Third, Plaintiff does not even attempt to assert the application of the identity of interest exception, nor do the circumstances presented here warrant it.

As for the first factor, Plaintiff was well aware of Liberty's denial of her claims and its basis for denial prior to filing her EEOC charge.  *See* [Dkt. #8, Exs. to Compl. at 33 (stating that before she was terminated from Sikorsky she had already "appeal[ed] Liberty's decision denying [her] use of sick days" and was informed by Sikorsky that she would be removed from the company's payroll and could not use her sick days "because Liberty denied [her] claim for short/long term disability").  Second, Liberty's only apparent connection to the other Defendants in this case was its position as plan administrator of UTC's employee benefits program.  It is "legally distinct" from Sikorsky and UTC, and had it been named, Liberty almost certainly would have defended the action by contending, as it does here, that it was not Plaintiff's employer.  *Wei Hong Zheng v. Wong*, No. 07-cv-4768 (FB)(JO), 2009 WL 2601313, at *5 (E.D.N.Y. Aug. 24, 2009) (finding second factor "weigh[ed] strongly against plaintiffs" where the unnamed defendants were legally distinct from the named defendant and "would have undoubtedly argued that [the named defendant] was plaintiff's sole employer" had they participated in the administrative proceedings).  In addition, the decision to deny disability benefits was made by Liberty, and Plaintiff's failure to name it "deprived the agency of the opportunity to investigate" whether this decision was made with a discriminatory intent, thus rendering Liberty "far from 'unnecessary'

to the EEOC proceedings." *Consolmagno*, 2011 WL 4804774, at *7.   Third, there is nothing to suggest that Liberty in any way represented to Plaintiff that its relationship with Plaintiff was to be through Sikorsky, as evidenced by the fact that Plaintiff separately applied to and communicated with Liberty regarding her claims for benefits.   Thus, the only factors weighing in favor of the exception are the facts that Plaintiff was unrepresented throughout the administrative process and that Liberty did not suffer actual prejudice as a result of its absence from the EEOC proceedings.   *See Goyette v. DCA Adver. Inc.*, 830 F. Supp. 737, 748 (S.D.N.Y. 1993) (no prejudice where agency took no conciliatory action).   These two factors are not sufficient to overcome the weight of the other factors counseling against application of the identity of interest exception.

### b. Liberty was Not Plaintiff's Employer

An employer-employee relationship is a "primary element" of an ADA claim.   *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-2(a)); *Heller v. CONRAIL*, 331 F. App'x 766, 768 (2d Cir. 2009) (Title VII and the ADA "apply only to discriminatory practices by an employer").   Here, there is no dispute that Liberty never hired Plaintiff, never received any work from Plaintiff, never compensated Plaintiff, nor did it terminate Plaintiff.   Indeed, the Complaint alleges that "[a]t all times relevant . . . the Plaintiff . . . was an employee of Sikorsky . . . which is a subsidiary of . . . UTC . . . ."   [Dkt. #71 Second Corrected Second Am. Compl. at ¶ 3].

Notwithstanding these facts, Plaintiff contends that Liberty, UTC, and Sikorsky "could" be deemed an "[i]ntegrated [e]nterprise," but that such

"assessment is dependent upon the plaintiff developing an evidentiary record sufficient for the Court to determine whether or not a genuine issue of material fact exists with respect to this issue."  [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 7].

The integrated employer test, also referred to as the single employer test, "enable[s] an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer."  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005).  "A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise."  *Id.* at 198 (citations and quotations omitted).  This test "has been applied in cases arising under Title VII, the ADA, and the [ADEA]." *Trusz v. UBS Realty Investors, LLC*, No. 3:09-cv-268 (JBA), 2010 WL 1287148, at *6 (D. Conn. Mar. 30, 2010) (citing cases).  "The employee satisfies this rule if he shows participation by the defendant that is sufficient and necessary to the total employment process [of the employer], even absent total control or ultimate authority over hiring decisions."  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000) (citation and quotation omitted).

To determine whether two entities are sufficiently integrated to be considered a single employer for purposes of the ADA, "[t]he Second Circuit uses a four-part test . . . '(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.'"  *Trusz*, 2010 WL 1287148, at *7 (quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)).  The second element, centralized control

of labor relations, is "crucial" and includes "tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions."  *Parker*, 204 F.3d at 341.

While Plaintiff correctly notes that "if two [] corporate entities can be deemed to constitute an 'Integrated Enterprise' . . . both could be deemed liable" under the ADA, Plaintiff's arguments under this doctrine fail.  [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 7].

First, contrary to Plaintiff's request that the Court decline to consider whether Liberty was Plaintiff's employer at this stage of the proceeding, courts routinely consider this question and apply the four-part integrated enterprise test in the context of motions to dismiss.  *See, e.g., Trusz*, No. 3:09-cv-268 (JBA), 2010 WL 1287148, at *6 (D. Conn. Mar. 30, 2010) (applying integrated enterprise test to allegations in complaint and denying defendants' motion to dismiss); *Tyghter v. Beachside Capital Partners, Inc.*, No. 3:09-cv-610 (RNC), 2010 WL 3909341, at **1-2 (D. Conn. Sept. 30, 2010) (denying motion to dismiss); *McAllister v. Price Rite, Inc.*, No. 3:09-cv-1888 (VLB), 2012 WL 696125, at *4 (D. Conn. Mar. 1, 2012) (granting motion to dismiss where plaintiff "failed to set forth any factual predicate to allege that [defendant] may be held liable under Title VII as the employer of [co-defendant's] employees").[8]  Plaintiff does not offer any good

---

[8] Plaintiff's citation to *U.S. v. City of New York*, 359 F.3d 83 (2d Cir. 2004), in support of her request that this Court withhold ruling on this issue until summary judgment is not persuasive, as the case is inapposite.  First, that case concerned the district court's application of "the thirteen factors" derived from the federal common law of agency to determine the existence of an employment relationship, not the integrated enterprise or single employer test.  *See id.* at 92.  Such factors become relevant "[o]nce plaintiff furnishes proof that her putative employer remunerated her for services she performed . . . . ."  *Id.*  Here, there is

cause for her request that the Court overlook Liberty's well-founded argument. The only support she offers is her assertion that her disability discrimination claim against Liberty is otherwise meritorious, notwithstanding the question of whether or not she was ever employed by Liberty to begin with.  *See* [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 8].[9]

Second, the Operative Complaint is devoid of any allegations even remotely hinting at an employer-employee relationship between Plaintiff and Liberty.  In addition to describing Defendant Sikorsky as her employer at all relevant times, the Complaint does not contain *any* allegations of interrelation of operations, common management, or common ownership.  The Complaint does not assert that employees of Liberty and Sikorsky communicated with one another about Plaintiff's benefits claims or that any decisions Sikorsky made regarding Plaintiff's employment came at the request of Liberty.  At most,

---

no dispute that Liberty did not pay Plaintiff for any services, nor did Plaintiff perform any for Liberty.  Second, in reversing the district court's ruling which granted defendant's motion to dismiss, the Second Circuit did not hold that the district court prematurely resolved this issue.  It simply disagreed with the court's construction of the allegations in the complaint.  *See id.* Third, the relationship between the plaintiffs in the case, city workers who "received cash payments and food stamps" from their employer, the city, "in return for their work" bears no resemblance to that of Plaintiff and Defendant Liberty, whose only connection to Plaintiff's employment is its administration of her employer's benefits program.  *Id.*

[9] The Court does not share Plaintiff's view.  As to discriminatory conduct undertaken by Liberty, the Operative Complaint offers only the conclusory assertion that Liberty's benefit denials were "due, in substantial part, to the Plaintiff's physical and mental disabilities." [Dkt. #71, Second Corrected Second Am. Compl. at ¶ 15].  Plaintiff pleads absolutely no facts in support of this conclusion.  Indeed, the Complaint itself appears to reach a different one, that is, that Liberty denied her benefits because it found her to be "a malingerer."  [*Id.* at ¶ 16].  This would appear to indicate that Liberty denied her benefits not *because* of her physical and mental disabilities, as is necessary to sustain an ADA claim, but because it believed that she was *not* disabled.

Liberty's role as plan administrator of Plaintiff's employee benefits program, in which it denied Plaintiff use of accrued sick days and other employment-related benefits, indicates some impact on Plaintiff's employment, but this is not sufficient to establish centralized control of labor relations.  *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993) (declining to find parent corporation an employer under Title VII and the ADEA where parent "serve[d] as ERISA Plan Administrator for the subsidiary" because this fact did not "evidence[] excessive control").

Accordingly, Count I of the Operative Complaint is DISMISSED as to Defendant Liberty.

### 2. Counts V and VI of the Operative Complaint Are Preempted by ERISA

The Employee Retirement Income Security Act ("ERISA") applies to any "employee benefit plan" established or maintained by an employer or employee organization engaged in commerce or in any industry or activity affecting commerce.  29 U.S.C. § 1003(a)(1).  The term "employee benefit plan" includes any welfare benefit plan that "was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness . . . [or] disability . . . ."  29 U.S.C. § 1002(1).  Thus, any claims arising out of Liberty's denial of Plaintiff's use of accrued sick days and STD and LTD benefits are governed by ERISA.[10]

Count V of the Operative Complaint is a state law breach of contract claim against Defendant Liberty, based on Liberty's "unreasonable deni[al]" of

---

[10] The employee benefit plan itself, which Plaintiff attached to the Original Complaint, also states that it is "subject to requirements of [ERISA]" and includes sick pay, STD, and LTD benefits.  [Dkt. #8-3, Exs. to Compl. at 58].

employee benefits to which Plaintiff "was rightfully entitled."  [Dkt. #71, Second Corrected Second Am. Compl. at 10, ¶¶ 26-27, 29].  Count VI is a claim for intentional infliction of emotional distress, which is also predicated on Liberty's denials of benefits.  [*Id.* at 11 (incorporating by reference the allegations in ¶¶ 1-24 of the Operative Complaint in support of intentional infliction claim), ¶¶ 14-16 (allegations against Liberty based on its denial decisions)].

"The broad scope of ERISA preemption is well recognized, and state common law causes of action which relate to ERISA are generally preempted thereunder."  *Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund v. Rubino*, No. 99 Civ. 3294 (HB), 2001 WL 64738, at *6 (S.D.N.Y. Jan. 25, 2001) (citing and quoting *Diduck v. Kaszycki & Sons Contractors Inc.*, 974 F.2d 270, 288 (2d Cir. 1992) (citations omitted) ("A state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted.")).  A state law "relates to" an employee benefit plan and is preempted by ERISA, "'if it has a connection with or reference to such a plan.'"  *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 111 S.Ct. 478, 483 (1990)).  "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit."  *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146-47 (2d Cir. 1989).

Specifically with regard to state law claims based on denials of ERISA plan benefits, courts in this District have held on multiple occasions that claims for

breach of contract and intentional infliction of emotional distress are preempted. *See Callahan v. Unisource Worldwide, Inc.*, 3:01-cv-1205 (CFD), 2003 WL 1714369, at **4, 6 (D. Conn. Mar. 27, 2003) (finding breach of contract claim based on denial of benefits preempted, stating that "[d]istrict courts have found breach of contract . . . claims preempted by ERISA in similar contexts" and citing additional decisions from this District); *Allen v. Verizon Wireless*, No. 3:12-cv-482 (JCH), 2013 WL 2467923, at *5 (D. Conn. Jun. 6, 2013) (finding plaintiffs' "claims for intentional infliction of emotional distress are preempted because the actions taken by [defendant employer] and [defendant plan administrator] that form the basis of her claims took place in the processing of her STD benefits request"); *Case v. Hosp. of St. Raphael*, 38 F. Supp. 2d 207, 209 (D. Conn. 1999) (dismissing as preempted plaintiff's claims of intentional and negligent infliction of emotional distress predicated on allegedly wrongful withholding of LTD benefits because "[t]he viability of these claims relates directly to the administration of the ERISA plan, and the liability of the parties is dependent upon the existence of the ERISA plan and rights conferred by it").

In response, Plaintiff "concede[s], with respect to both her Count Five contract claim, as well as her claim sounding in intentional infliction of emotional distress, [that] they relate to" an ERISA plan. [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 9]. In addition, while Plaintiff floats the possibility that Defendant Liberty could be found to be estopped from denying benefits, nothing in the Operative Complaint supports Plaintiff's bare assertion. [*Id.* at 10]. No promise, reliance, injury caused by reliance, or injustice in the event of non-

enforcement appear anywhere in the allegations concerning Defendant Liberty. *See Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d Cir. 1996); *see also* [Dkt. #71 Second Corrected Second Am. Compl. at ¶¶ 14-16]. In addition, the Court declines Plaintiff's invitation to construe a federal claim under ERISA from two state law causes of action which do not mention ERISA, nor even allege facts tending to show that Plaintiff met the plan's conditions to receive STD or LTD benefits. *See* [Dkt. #98, Pl.'s Opp. to Def. Liberty's Mot. to Dismiss at 10].[11]

Finally, the Court declines to grant Plaintiff leave to amend her Complaint for a *fifth* time. *See* [Dkt. ## 44, 68-69, 71]. Leave to amend is particularly inappropriate here, given that Plaintiff was put on notice of the ERISA preemption issue by Defendant Liberty when it filed its motion to dismiss Plaintiff's Amended Complaint. *See* [Dkt. #57-1, Def. Liberty's Mot. to Dismiss at 15-16 (moving to dismiss Plaintiff's intentional infliction claim on the basis of ERISA preemption)]; *see also Roessner v. Employee Term Life*, 589 F. Supp. 2d 174, 176 (D. Conn. 2008) ("Reasons to deny such leave to amend include . . . repeated failure to cure deficiencies by amendments previously allowed . . . .") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For the foregoing reasons, Plaintiff's complaint is DISMISSED as to Defendant Liberty.

---

[11] Indeed, even if not preempted, Plaintiff's reliance for her breach of contract claim on a conclusory allegation that she was entitled to benefits under the plan, without citation or reference to any plan language, and Liberty's benefit denial as the sole factual predicate for her intentional infliction claim, renders each of the counts insufficient as a matter of law.

**B.**    **Claims Against the Employer Defendants**

   **1.**   **Count I Was Timely Brought and Plaintiff Exhausted Her Administrative Remedies As to Defendant UTC**

   Defendants UTC and Sikorsky initially contend that Plaintiff's ADA and Title VII claims are time-barred.  Defendants' argument hinges on an ambiguously worded allegation in the Operative Complaint, stating that Plaintiff "obtained" her Right to Sue letter "on or about May 30, 2013."  [Dkt. #71, Second Corrected Second Am. Compl. at ¶ 23].  According to Defendants, if Plaintiff received the letter on May 30, 2013, she would have had until August 28, 2013 to file her lawsuit.  [Dkt. #92-1 Memo. in Supp. of Employer Defs.' Mot. to Dismiss at 6].  However, this allegation is contradicted by multiple pieces of evidence in the record, including Plaintiff's original, verified Complaint, which stated that she received the letter on or after June 4, 2013, and the letter itself, which appears to bear a stamp with the date "May 30," indicating that the letter was sent by the EEOC on that date.  *See* [Dkt. #1 Compl. at 4, ¶ 1.c.; Dkt. #8, Exs. to Compl. at 4].

   Construing the allegations in a light most favorable to Plaintiff, and therefore assuming that the letter was sent to her no earlier than May 30, 2013,"[a]bsent sufficient evidence to the contrary, it is presumed that [Plaintiff] received . . . her right to sue letter three days after its mailing," on June 2, 2013, at the earliest.  *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 156 (E.D.N.Y. 2010) (quoting *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010)).  90 days from June 2, 2013 was August 31, 2013, a Saturday.  In light of the Labor Day weekend, the next business day was September 3, 2013, the date on which Plaintiff filed her Original Complaint.  *See* [Dkt. #1].  Thus, Plaintiff's

complaint was timely filed.

The Employer Defendants raise a second exhaustion argument in connection with Count I, claiming that Plaintiff failed to exhaust her administrative remedies because "UTC was not named as a respondent in the charge."  [Dkt. #92-1 Memo. in Supp. of Employer Defs.' Mot. to Dismiss at 7]. While Defendants are correct that in the formal verified charge, only Defendant Sikorsky is named, Plaintiff does name UTC in the intake questionnaire, *see* [Dkt. #8, Exs. to Compl. at 65], which, for the reasons explained above, the Court considers as part of the charge.  *See supra* at 12-15.  Accordingly, Plaintiff has exhausted her ADA claim as to parent entity UTC, and Defendants' motion as to Count I is DENIED.

### 2. Count II is Reasonably Related to the Allegations Plaintiff Raised in Her EEOC Complaint

Count II of the Complaint brings a hostile work environment claim under Title VII.  While Defendants are correct that in her formal charge, the only discrimination claim Plaintiff specifically asserts is disability discrimination, the allegations raised in her intake questionnaire and communications with the EEOC gave the agency "adequate notice to investigate" Plaintiff's hostile work environment claim.  *Williams*, 458 F.3d at 70.

First, in her intake questionnaire, Plaintiff wrote that "Sikorsky caused [her] nervous breakdown due to work[-]related stress and dismissal by management when [she] asked for help."  [Dkt. #8, Exs. to Compl. at 66].  She also identified an individual who would inform the EEOC of the "work conditions" under which Plaintiff found herself, and the "work stress and treatment" Plaintiff received.

[*Id.*].   Then, in her subsequent submission during the EEOC investigation, Plaintiff informed the EEOC that she was in a "strained work environment," endured multiple instances of "harassment" from colleagues, including being yelled at and intimidated, that she sought help but was "dismissed," and that she and her doctors had concluded that it was "a hostile work environment."  [*Id.* at 30-32].  Taken together, Plaintiff provided the EEOC with sufficient allegations for the agency to investigate and consider a hostile work environment claim.

    In addition, the conduct underlying Plaintiff's Title VII claim is commingled with Defendants' alleged refusal to provide Plaintiff a reasonable accommodation. *See* [Dkt. #71, Second Corrected Second Am. Compl. at ¶¶ 12 ("Rather than provide a reasonable accommodation to Plaintiff . . . [Defendants] . . . met[ed] out unfavorable, harassive [sic] treatment instead.") 17 ("Plaintiff began receiving emails and phone calls from [Defendants] that repeatedly and harassively [sic] asked her for a return to work date" following Plaintiff's panic attack and departure from work)].  She does not bring a claim based on a wholly different type of discrimination, like the cases cited by Defendants.  *See Wright-Kahn v. People's Bank, Bridgeport*, No. 3:00-cv-2314 (JBA), 2001 WL 902653, at *2 (D. Conn. Jul. 25, 2001) (finding failure to exhaust where "[p]laintiff's sex, race, color, national origin and age claims in her complaint . . . [we]re not reasonably related to the mental and physical disability discrimination alleged in the EEOC charge"); *Edwards v. New York State Unified Court Sys.*, No. 12 Civ. 46 (WHP), 2012 WL 6101984, at *7 (S.D.N.Y. Nov. 20, 2012) (failure to exhaust disability discrimination claim where before EEOC plaintiff claimed she was discriminated against "on the

basis of her race and retaliated against [] for filing a complaint with the EEOC and filing a sexual harassment suit").  Instead, Plaintiff's hostile work environment claim is a direct outgrowth of her disability discrimination claim.  *See Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 110 (S.D.N.Y. 1995) ("When one has complained of a particular kind of discrimination in employment, any and all effects and results flowing from *that kind* of discrimination may be sued upon even though a particular effect or result had not earlier been asserted.") (emphasis in original) (citation and quotation omitted).

Accordingly, the Employer Defendants' motion as to Count II is DENIED.

### 3.   Count III of the Complaint Fails to State a Claim

Count III brings claims against Defendants David, Lafferty, Morris, and Meisner, private individuals and employees of Defendants Sikorsky and UTC, under 42 U.S.C. §§ 1981 and 1983, for violating her right to equal protection under the law and for discrimination on the basis of Plaintiff's disabilities and gender. *See* [Dkt. #71, Second Corrected Second Am. Compl. at 8, ¶¶ 25-27].  As an initial matter, Plaintiff's claim under § 1981 must be dismissed because actions for gender or disability discrimination may not be brought pursuant to this section. *See Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000) ("The purpose of § 1981 . . . is to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination because of their ancestry or ethnic characteristics.") (dismissing disability discrimination claim); *Alexander v. City of New York*, 957 F. Supp. 2d 239, 247 (E.D.N.Y. 2013) ("§ 1981 does not provide a claim for gender-based employment discrimination.").  Plaintiff's claim

under § 1983 also fails because the individuals and entities involved in the relevant conduct were all private citizens and the Complaint is devoid of any allegations of state action.  *See Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a violation of his constitutional rights under §1983 is . . . required to show state action.").

Accordingly, the Employer Defendants' motion as to Count III is GRANTED.

4.  <u>Count IV Must be Dismissed Because Plaintiff Has Available and Has Availed Herself of a Statutory Remedy</u>

In Count IV, Plaintiff asserts a common law wrongful termination claim against Defendants UTC and Sikorsky.  *See* [Dkt. #71, Second Corrected Second Am. Compl. at 9].  This claim fails as a matter of law because Plaintiff has available and has brought statutory claims based on the same conduct.  *See Allen*, 2013 WL 2467923, at *18 (D. Conn. Jun. 6, 2013) (dismissing wrongful discharge claim based on plaintiff's disability because "she has an adequate statutory remedy for the violation of public policy" including the ADA); *Vera v. Waterbury Hosp.*, No. 3:10-cv-1417 (WWE), 2010 WL 4736278, at *3 (D. Conn. Nov. 16, 2010) (dismissing wrongful termination claim where plaintiff could "assert all of his claims through the various statutes that he cites within the complaint" including the ADA).

Accordingly, the Employer Defendants' motion as to Count IV is GRANTED.

5.  <u>Count VI States a Claim as to the Employer Defendants</u>

Plaintiff brings a claim for intentional infliction of emotional distress against the Employer Defendants based on a pattern of harassment leading up to and following Plaintiff's departure from work.  *See* [Dkt. #71, Second Corrected

Second Am. Compl. at 11-12, ¶¶ 1-29].  Specifically, Plaintiff pleads that on August 16, 2011, David "yell[ed] and scream[ed] at her" when he called her to determine when she would return to work.  [*Id.* at ¶ 25].  She further claims that Defendants David, Lafferty, Morris, and Meisner "engaged in a pattern of callously harassing and intimidating the Plaintiff" after she spoke with David about her increased stress and its likely result in a major panic attack absent an accommodation to lessen her work levels.  [*Id.* at ¶ 26; ¶¶ 9-10, 12].  Moreover, prior to engaging in this conduct, three of the defendants, David, Lafferty, and Meisner "had specific knowledge of Plaintiff's disabilities" due to her having taken leave in prior years in order to manage them.  [*Id.* at ¶ 18].

To state a claim for intentional infliction, Plaintiff must allege facts sufficient to show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  *Appleton v. Board of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (Conn. 2000) (citations and quotations omitted).  To be extreme or outrageous, the conduct must "exceed[] *all bounds* usually tolerated by decent society."  *Petyan v. Ellis*, 200 Conn. 243, 254, 510 A.2d 1337, 1342 n. 5 (Conn. 1986) (emphasis in original) (citations and quotations omitted).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient . . . ."  *Appleton*, 254 Conn. at 210, 757 A.2d at 1062

(citations and quotations omitted).  "Such conduct may, however, give rise to a cause of action where the defendant is aware of the peculiar sensitivities of the plaintiff."  *Brown v. Ellis*, 40 Conn. Supp. 165, 167, 484 A.2d 944, 946 (Conn. Super. Ct. 1984).  ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reasons of some physical or mental condition or peculiarity.  The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.") (quoting 1 Restatement (Second), Torts § 46); *see also Calderon v. Dinan & Dinan PC*, No. 3:05-cv-1341 (JBA), 2006 WL 16146157, at *10 (D. Conn. Jun. 13, 2006) ("In some cases, allegations that the defendant knowingly exploited a particular susceptibility of the plaintiff have survived dismissal."). "Under Connecticut law, it is for the court to make an initial determination of whether the alleged misconduct meets the threshold requirements of outrageousness."  *Brown v. Ne. Nuclear Energy Co.*, 118 F. Supp. 2d 217, 223 (D. Conn. 2000) (citing *Appleton*, 254 Conn. at 210. 757 A.2d at 1062)).

At the present stage, and in light of the Employer Defendants' knowledge of Plaintiff's mental and physical disabilities *before* allegedly engaging in the pattern of harassment, which itself was predicated on the impact of those disabilities on Plaintiff's ability to work, the Court finds that the allegations state a claim for intentional infliction of emotional distress.  Accordingly, the Employer Defendants' motion as to Count VI is DENIED.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, Defendant Liberty's motion to dismiss is GRANTED in its entirety and the Employer Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Counts I, II, and VI remain live as to the Employer Defendants.  The remainder of the Complaint is DISMISSED.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 30th day of September 2015, Hartford, Connecticut

_____/s/_____
**Vanessa L. Bryant,
United States District Judge**
